[No. A126745. First Dist., Div. Three. Oct. 18, 2010.]

DEREK BRENNER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Miguel Neri and Lyn Harlan, Deputy Attorneys General, for Defendant and Appellant.

James E. Dunn for Plaintiff and Respondent.

**OPINION**

**SIGGINS, J.**—This appeal challenges the trial court's determination that the Department of Motor Vehicles (the DMV, or the Department) failed to meet its burden of proving plaintiff Derek Brenner was driving with a blood-alcohol content of 0.08 percent or more when he was stopped by law enforcement officers. We find no error, and affirm.

## BACKGROUND

### I. *Arrest and Blood-alcohol Tests*

The relevant facts are undisputed. Near midnight on December 30, 2008, Officer Matt Gilliam of the California Highway Patrol stopped plaintiff after observing his erratic driving. Plaintiff's eyes were bloodshot, his speech was slow, and he smelled of alcohol. He performed poorly on a series of field sobriety tests. Three preliminary alcohol screening (PAS) tests taken over a five-minute interval measured his blood-alcohol content (BAC) at 0.080, 0.053, and 0.085 percent.

Plaintiff was arrested and submitted to a breath test. Two samples, taken at 12:42 a.m. and 12:45 a.m., respectively, gave identical readings of 0.08 percent BAC. Before and between the two tests Officer Gilliam tested the device with an air blank that registered 0.00 percent BAC.

## II. *Administrative Hearing*

Plaintiff requested an administrative hearing pursuant to Vehicle Code section 13558 to contest the suspension of his driver's license. At the hearing, Officer Gilliam testified about his observations of plaintiff's driving, his field sobriety and PAS tests, and his BAC tests. The hearing officer admitted Officer Gilliam's sworn report regarding plaintiff's breath test results and the arrest report, which included plaintiff's PAS results and a printout of his BAC test results.[1]

In response, plaintiff submitted maintenance records for the instrument used to test his breath and expert testimony from forensic toxicologist Kenneth Mark to explain that the calibration records showed, at the time of plaintiff's breath test, the device was producing readings higher for alcohol content by 0.002 percent than a calibrated sample. Although the deviation was within the variances allowable for breath-testing instruments under state regulations, Mark testified plaintiff's actual BAC was less than the 0.08 percent shown on his BAC results.

The DMV hearing officer suspended plaintiff's license. The hearing officer rejected plaintiff's contention that the breath test results were inflated "based on the following inference by the trier of fact: Ken Mark testified the calibration records indicate the breath machine was in compliance with Title 17 and the expected values were within tolerances. The testimony of Ken Mark indicating the machine was reading high by 0.002 is not sufficient enough to establish respondent's BAC was .07% because the third digit on the breath test results is truncated. Greater weight is given to the breath test results indicating respondent's BAC was .08%."

## III. *Trial Court Proceedings*

Plaintiff challenged the DMV decision by a petition for writ of administrative mandate seeking to set aside his suspension. He argued, inter alia, that the calibration records and expert testimony were sufficient to rebut the presumptive correctness of BAC test results recorded by officials, and that the DMV failed to prove by a preponderance of the evidence that he was driving with a BAC of 0.08 percent or higher.

---

[1] Other DMV documents not relevant to the issues raised in this appeal were also admitted.

The DMV responded that plaintiff provided no evidence to rebut its showing that the arresting officer administered the test in accordance with all statutory requirements. It contended the calibration records were insufficient rebuttal evidence because correcting plaintiff's test results for the 0.002 percent variance identified by plaintiff's expert would bring his test results under the legal limit only if his actual BAC were 0.080 or 0.081 percent. If plaintiff had a BAC of 0.082 percent to 0.089 percent, his corrected test result would still yield a BAC of 0.08 percent or greater.[2] Thus, since there was an 80 percent probability that plaintiff's BAC was at least 0.08 percent and only a 20 percent chance it was under the legal limit, the Department said plaintiff's evidence was merely speculative and the hearing officer's determination was supported by the weight of evidence.

The trial court granted the petition for writ of mandate and ordered the DMV to set aside the suspension of plaintiff's license. It explained: "The Department did not present any evidence that [plaintiff's] BAC was higher than 0.08. The Department is in fact precluded by Cal. Code Regs., tit. 17, § 1220.4 from reporting BAC results to more than two decimal places. The Department did not present any evidence to contradict the calibration records that demonstrate the machine was consistently reading higher than the true values tested. The Department did not call an expert witness on any issues. [¶] In this case, the breath result was right at the threshold: 0.08. Therefore any calibration error that causes the instrument to read high necessarily drops the true result below the 0.08 threshold. Since the Department did not present evidence that [plaintiff's] BAC was higher than 0.08, guessing what the third, unreported digit of his test result might be is not only precluded by Title 17, but it would be just that: guessing. On the evidence presented, the Department did not meet its burden of proof by a preponderance."

The DMV timely appealed.

## DISCUSSION

### I. *The Legal Framework*

■ The burdens of proof at administrative DMV hearings are allocated as stated in *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232–1234 [130 Cal.Rptr.2d 209]. An administrative hearing before the DMV " 'does not require the full panoply of the Evidence Code provisions used in criminal and

---

[2] Forensic analysis facilities are required to report blood analysis results to only two decimal places and to delete the digit in the third decimal place when obtained. (Cal. Code Regs., tit. 17, § 1220.4, subd. (b).) All further references to Regulations are to title 17 of the California Code of Regulations.

civil trials.' [Citation.] In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. [Citations.] The DMV may satisfy its burden via the presumption of Evidence Code section 664. [Citation.] 'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.]' [Citation.] With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test. [Citations.]

"Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. [Citations.] 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ." [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' [Citations.] [¶] 'In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " ' [Citation.] Even exercising its independent judgment, the trial court still 'must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.' " (*Manriquez v. Gourley, supra*, 105 Cal.App.4th at pp. 1232–1233.)

On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence. We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Lake v. Reed* (1997) 16 Cal.4th 448 [65 Cal.Rptr.2d 860, 940 P.2d 311].) " ' "Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." ' " (*Id.* at p. 457.)

## II. *Application*

Applying the standards articulated in *Manriquez,* there is no basis for rejecting the trial court's ruling. Although the arresting officer's testimony and plaintiff's BAC results were sufficient to establish the Department's prima facie case, plaintiff presented evidence that the instrument used to measure his BAC produced results that were higher than the accurate values. Plaintiff thus rebutted the Department's prima facie showing with evidence that the recorded test results were inaccurate. Accordingly, the burden shifted back to the DMV to prove by a preponderance of evidence that the test results were reliable. It did not do so.

The DMV, however, contends plaintiff's showing was insufficient because he "produced no evidence that the alleged breath-test variance violated Title 17." It maintains that the 0.002 percent variance shown by the calibration records and Mark's testimony are irrelevant as a matter of law because the pertinent regulations allow the use of breath test instruments with accuracy readings of plus or minus 0.01 percent (Regs., § 1221.4, subd. (a)(2)(A)), and testing agencies are required to report results to the second decimal place. (Regs., § 1220.4.) Accordingly, the DMV argues, "[t]he .002 variance . . . is legally irrelevant because the statutory scheme allows for variances from the 'true result' that far exceed .002 percent."

■ The Department's argument fails because it conflates the regulations governing instrument accuracy with those that establish legal BAC levels for drivers of motor vehicles. Regulations section 1221.4, subdivision (a)(2) addresses the accuracy standards for devices used to measure breath-alcohol content and requires accuracy of plus or minus 0.01 percent of the true value. (Regs., § 1221.4, subd. (a)(2)(A).) Pursuant to Regulations section 1221.4, subdivision (a)(2)(A)1, the results of device testing "shall be used by a forensic alcohol laboratory to determine if the instrument continues to meet the accuracy set forth in Section 1221.4(a)(2)(A)." While the regulations require forensic testing agencies to ensure their instruments meet a minimum level of accuracy, nothing in the regulatory scheme precludes a driver from introducing evidence that the instrument used to test his or her BAC deviated by some measure less than 0.01 percent of the true value. Nor does any regulation bar a trial court from considering such a deviation in determining whether an administrative license suspension is supported by sufficient evidence.

Neither does Regulations section 1220.4 suggest any legal barrier to the introduction of such evidence. As noted earlier, Regulations section 1220.4, subdivision (b) directs forensic laboratories that "[a]nalytical results [with the exception of tissue analysis] shall be reported to the second decimal place,

deleting the digit in the third decimal place when it is present." But this provision controls the reporting of BAC results, not instrument accuracy, and here again, nothing in the statutory language precludes a driver from offering evidence that a testing device deviated by hundredths of a percentage. We therefore disagree that the calibration records were "legally irrelevant."

The DMV argues alternatively that, even if the 0.002 percent variance is subtracted from plaintiff's test results, "the math calculation based on it is too speculative to sustain the finding that [plaintiff's] actual BAC was .07 percent." But there was no finding, and no burden on plaintiff to show, that his actual BAC was 0.07 percent. The burden, rather, was on the DMV to prove by a preponderance of evidence that his BAC was 0.08 percent or higher. The relevant legal question is whether it did so.

We also are unpersuaded by the DMV's more general assertion that plaintiff's evidence was too speculative to defeat the presumption of validity established by Evidence Code section 664. The Department observes that, because BAC results are reported to only two decimal places, a test result reported as 0.08 percent could actually represent a BAC anywhere between 0.080 and 0.089 percent. Correcting for the device's 0.002 percent variance would only bring plaintiff's test results under 0.08 percent if his actual BAC was 0.08 or 0.081 percent, the DMV argues, so the accuracy records establish a mere two in 10 chance that plaintiff's BAC was under the legal limit.

■ The DMV's argument that this degree of probability is insufficient to "show by a preponderance of the evidence (i.e., 51 percent)" that plaintiff's BAC was below 0.08 percent confuses the parties' respective burdens. It is the Department's burden to prove, by a preponderance of evidence, that a driver was operating a vehicle with a BAC at or over the legal limit. It is not the driver's burden to show at least a 50 percent possibility that his actual BAC was below 0.08 percent. (*Manriquez v. Gourley, supra*, 105 Cal.App.4th at p. 1232.) Although the DMV met its initial burden when it produced the official blood-alcohol test results, plaintiff presented affirmative evidence that the device reported excessive results when tested, and thereby defeated the presumption of validity accorded to official documents under Evidence Code section 664. The burden shifted back to the Department to prove the test was nonetheless reliable. (*Manriquez, supra*, at p. 1232.) It produced no evidence to meet its burden.

The Department also asserts the trial court failed to consider the PAS results, Officer Gilliam's observation of plaintiff's impaired driving, the field sobriety tests, and other indicia of intoxication. These arguments focus exclusively on the evidence supporting the DMV hearing officer's conclusions, and therefore misapply the substantial evidence standard. As stated, our

task is to search for evidence or draw inferences from the evidence supporting the trial court's conclusions, not those of the DMV hearing officer. (*Lake v. Reed, supra*, 16 Cal.4th at p. 457.) Moreover, the basis for suspension of plaintiff's driver's license was his operation of a vehicle while he had a BAC of 0.08 percent. While the impressions of the officer may have a bearing on plaintiff's level of impairment, they have no bearing on the precise level of his BAC. As there is evidence in the record supporting the trial court's conclusion, we are bound to uphold it.

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 2, 2011, S188471. Werdegar, J., did not participate therein.