Filed 8/15/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASHLEY JOURDAN COFFEY, | |
| Plaintiff and Appellant, | G047562 |
| v. | (Super. Ct. No. 30-2012-00549559) |
| JEAN SHIOMOTO, as Chief Deputy Director, etc., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

Law Offices of Chad R. Maddox and Chad R. Maddox for Petitioner.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Kenneth C. Jones, and Kevin K. Hosn, Deputy Attorneys General, for Defendant and Respondent.

\* \* \*

Plaintiff Ashley Coffey was arrested for driving under the influence. An hour after she was pulled over, she took a breathalyzer test. The test result was 0.08 percent blood-alcohol content (BAC). A few minutes later she took another test resulting in a 0.09 percent BAC. Twenty-five minutes later she took a blood test resulting in 0.095 percent BAC. The Department of Motor Vehicles (DMV) suspended Coffey's license after conducting an Administrative Per Se (APS) hearing. The trial court denied a petition for a writ of mandate. On appeal, Coffey contends the uncontradicted expert testimony at the APS hearing demonstrated her BAC was rising throughout the three tests and thus below 0.08 percent at the time she was driving.

We affirm. Our review is limited to determining whether the trial court's judgment is supported by substantial evidence. Coffey's BAC test results, though they indicate a pattern of rising blood alcohol on their face, were within the margin of error of each other. Thus they were indicative of rising BAC, but not conclusive. In ascertaining whether Coffey's BAC was at least 0.08 percent at the time of driving, the trial court properly looked to circumstantial evidence. The evidence of Coffey's erratic driving, failed field-sobriety tests (FST's), and objective indications of intoxication are substantial evidence that Coffey had a BAC equal to or greater than 0.08 percent at the time of driving.

FACTS

At 1:32 a.m. a California Highway Patrol officer observed Coffey's car weaving in and out of lanes on the freeway. The officer positioned his vehicle behind Coffey's and activated the emergency lights. Rather than pull over to the right, Coffey began veering to the left, eventually changing from the number two lane to the number one lane. The officer then activated his siren in an attempt to get Coffey to yield to the right, but Coffey began to veer further to the left into the carpool lane. The officer then

2

used his vehicle's public address system to advise Coffey to pull over to the right. Coffey eventually slowed down and pulled over. Upon making contact, the officer immediately noticed a strong odor of alcohol emitting from Coffey's vehicle. Coffey denied having consumed alcohol.

A second officer arrived to perform FST's. He immediately smelled the odor of alcohol emitting from Coffey's person and observed Coffey's red, watery eyes. In performing the horizontal gaze nystagmus test, Coffey displayed a lack of smooth pursuit in both eyes. In performing the walk and turn test, Coffey missed the heel-to-toe on five of the nine steps, turned clockwise instead of counter-clockwise, and used both feet to turn instead of one. And in performing the Romberg test, Coffey swayed slightly in all directions, her eyes trembled, and she estimated 30 seconds at 37 seconds.[1] The officer concluded Coffey failed the FST's and placed her under arrest at 2:00 a.m.

At 2:28 a.m., Coffey performed a breathalyzer test with a result of 0.08 percent BAC. At 2:31 a.m., she took another breathalyzer test with a result of 0.09 percent. At 2:55 a.m., she took blood tests with results of 0.095 percent and 0.096 percent.

After the arrest, the DMV issued an APS suspension order and held an evidentiary hearing where Coffey was represented by counsel. The exhibits admitted into evidence were the arresting officer's sworn statement (DMV form DS-367), the officer's arrest report, and a supplemental arrest report. These exhibits detailed the circumstances recited above.

---

[1] In the Romberg test, a suspect is "asked to stand at attention, close his eyes, tilt his head back, and estimate the passage of 30 seconds. While [the suspect] perform[s] the test, [the officer] observe[s] [the suspect's] balance and his ability to accurately measure the passage of 30 seconds." (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 33.)

3

The only witness to testify was Coffey's expert. Coffey's expert opined that Coffey's BAC was below 0.08 percent at the time of driving based on two independent theories.

First, the expert contended the breathalyzer tests were within the margin of error of below 0.08 percent, and the consensus among experts in the field is that the "fair" result is to give the driver the benefit of the margin of error. The margin of error for breathalyzer tests is 0.02 percent and for blood tests is 0.01 percent. As a result the expert deemed a 0.08 percent to be a 0.06 percent.

The expert's second theory was that the test results indicated a pattern of rising blood alcohol, and that, given that pattern, Coffey's BAC must have been below 0.08 percent at the time of driving. The expert agreed with the statement, "the only way she wouldn't be rising would be that if she was coming down, and then her and the officer after the stop enjoyed some alcoholic beverages together, and then rose from that point." The hearing officer cross-examined the expert by noting that, given his earlier testimony regarding the margin of error, it is possible the actual BAC levels were not rising. The hearing officer stated, "[T]aking into consideration your margin of error issue . . . , could it have been in reverse to a .09 on the first breath and the .08 on the second for margin of error?" The expert responded, "You could say that." But, "that's why you look at the totality of the — of the situation."

After considering all of the evidence, the hearing officer "determined that the preponderance of evidence in this case supports that [Coffey] was driving a motor vehicle at the time that the concentration of alcohol in her blood was at or above 0.08%." The hearing officer rejected the expert's findings regarding the margin of error and rising blood alcohol, stating, "No reliable evidence was presented in support of the contention. [¶] The testimony of [the expert] is too speculative to support the contention. [¶] The contention is based on a subjective interpretation of the evidence." As a result, the hearing officer upheld Coffey's license suspension.

Coffey petitioned for a writ of mandate to set aside the suspension order. Coffey contended that her expert testimony had rebutted the 3-hour presumption of Vehicle Code section 23152, subdivision (b), by presenting expert evidence that Coffey's BAC was below 0.08 percent at the time she was driving.[2] She further contended the DMV had offered no evidence to establish Coffey's BAC at the time of driving and that the DMV officer was not free to arbitrarily reject uncontradicted expert testimony.

The court denied the petition by way of minute order, stating, "The DMV hearing officer was entitled to reject the uncontradicted testimony of petitioner's expert witness, and the hearing officer set forth reasons for doing so in this case. [Citation.] Even assuming that petitioner Coffey rebutted the presumption under [section 23152, subdivision (b)], there was sufficient evidence based on the blood-alcohol tests and the other circumstantial evidence based on the assessment, observations and tests by the arresting officers at the scene to support the DMV hearing officer's decision under the weight of the evidence." Coffey timely appealed. Coffey also petitioned us for a writ of supersedeas staying the suspension of her license. We issued a temporary stay of Coffey's license suspension.

Approximately seven months later we received notice that the trial court had dismissed the petition with prejudice. The circumstances surrounding the dismissal were that Coffey's attorney had not appeared at a status conference held after the notice of appeal had been filed. The record is unclear, but the purpose of the status conference may have been to discuss the format of a formal judgment. The court then issued an order to show cause re: dismissal, and Coffey's attorney again did not appear, so the court dismissed the petition with prejudice. We issued an order requesting the parties to

---

[2] All statutory references are to the Vehicle Code unless otherwise stated. Section 23152, subdivision (b), states, "it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

file letter briefs addressing whether the trial court had jurisdiction to dismiss the petition and whether the dismissal rendered the appeal moot. Both parties filed timely responses.

DISCUSSION

*The Appeal is Not Moot; the Trial Court Lacked Jurisdiction to Dismiss the Petition*

Both parties agree the court lacked jurisdiction to dismiss the petition. We also agree. "Despite the absence of a separate formal judgment, an order denying a petition for a writ of mandate 'constitutes a final judgment for purposes of an appeal.'" (*Wong v. Ohlone College* (2006) 137 Cal.App.4th 1379, 1382 fn. 3.) Here, the court's order expressly denied the writ of mandate. Nothing about the court's order suggests it was anything but a final determination of the rights of the party in the action. And nothing in the court's order directed either party to prepare a formal judgment. Thus the order is equivalent to a judgment. (*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 86 fn. 5 ["The order denying the mandate petition is appealable as the equivalent of a final judgment because it was a final determination of the rights of the parties and no further action by the trial court was contemplated"].) Once a proper notice of appeal has been filed the trial court loses jurisdiction to dismiss the action. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196-198.) Accordingly, the court was without jurisdiction to dismiss the petition and its act is void. (*Ibid.*) Thus the appeal is not moot.

*Standard of Review and Legal Framework*

On appeal Coffey contends that her expert's testimony rebutted the "3-hour presumption" under section 23152, subdivision (b), that her BAC tests were not indicative of her BAC at the time of driving, and that there was otherwise no substantial evidence to support the conclusion that her BAC was at least 0.08 percent at the time of

6

driving. We agree she rebutted the presumption, but we find substantial evidence supports the trial court's finding that Coffey's BAC was at least 0.08 percent at the time of driving.

"A person who operates a motor vehicle while intoxicated is subject to criminal prosecution and penalties. Prior to the criminal trial, however, the [DMV] must suspend the individual's driver's license as an administrative matter if it determines the person was driving a motor vehicle with a blood-alcohol concentration . . . of .08 percent or higher." (*Lake v. Reed* (1997) 16 Cal.4th 448, 451 (*Lake*).) "After either the arresting officer or the DMV serves a person with a 'notice of an order of suspension or revocation of the person's [driver's license],' the DMV automatically reviews the merits of the suspension or revocation." (*Id.* at p. 455.) "In those cases where the individual requests an administrative hearing, whether he or she was driving with a prohibited BAC is often proved by the introduction into evidence of the arresting police officer's sworn report describing the circumstances of the arrest, together with the results of a breath test administered by the officer." (*Id.* at p. 451.)

To sustain the suspension order, the DMV must determine "by the preponderance of the evidence" (1) that a peace officer had "reasonable cause to believe" the driver was driving under the influence of alcohol or drugs; (2) the driver was arrested (or, under circumstances inapplicable here, lawfully detained); (3) and, as applicable here, the driver was operating a motor vehicle when the driver "had 0.08 percent or more, by weight, of alcohol in her blood." (§ 13557, subd. (b)(3)(A)(B)(C)(i).)

"In ruling on a petition for writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, whether the weight of the evidence supported the administrative decision. [Citation.] . . . [Citation.] Under the independent judgment test, the court determines whether the administrative hearing officer abused his or her discretion because the findings are not supported by the weight of the evidence. [Citation.] The administrative

7

findings come before the superior court with a 'strong presumption of correctness,' and the burden rests on the petitioner to establish administrative error. [Citation.]

"On appellate review of the superior court's exercise of its independent judgment, this court will sustain the court's findings if they are supported by substantial evidence. [Citation.] We resolve all conflicts in favor of the DMV, as the party prevailing in the superior court, and give it the benefit of all reasonable inferences in support of the judgment. [Citation.] We do not substitute our deductions regarding the record for those of the superior court." (*Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1567-1568.) "'"We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings."'" (*Lake*, *supra*, 16 Cal.4th at p. 457.)

*Coffey Rebutted the 3-hour Presumption*

Coffey first contends the evidence at the APS hearing rebutted the 3-hour presumption under section 23152, subdivision (b), which states, "[I]t is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving." We agree this presumption was rebutted.

The 3-hour presumption affects the burden of producing evidence (Evid. Code, § 604), not the burden of proof (Evid. Code, § 605). As our high court explained, "section 23152, subdivision (b), does not create a conclusive presumption of intoxication, nor does it 'eliminate[] the prosecutor's burden of proof when the accused is found to have [0.10] percent, by weight, of alcohol in [his] blood.'" [3] "[T]he People still must

---

[3] Section 23152, subdivision (b), now prohibits driving with a BAC of 0.08 percent or higher.

8

prove beyond a reasonable doubt that at the time he was driving his blood alcohol exceeded 0.10 percent." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 265 (*Burg*).)

"The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.) In other words, when met with "contradictory evidence," the presumption "disappears." (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.)

The DMV objects to this line of reasoning as "lessen[ing] the significance of" the 3-hour presumption, but it is unclear precisely how the DMV would characterize the presumption. The DMV cites the legislative history of the presumption, as set forth in *Bell v. Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 311, as follows, "The stated need for the presumption arose from the absence in '[e]xisting law' of any 'provision for the delay involved between the time a person is arrested for a DUI and when the chemical test for BAC is actually administered,' of any 'means to determine a person's BAC at the time the person is actually *driving* the car,' or of any 'mention of time parameters for the administering of chemical tests and for their admission as admissable [*sic*] evidence into a court of law.' [Citation.] Thus, in enacting the presumption, the Legislature intended (1) to 'diminish the arguments that ha[d] arisen when extrapolating the [BAC] at the time of the test back to the time of the driving' [citation], (2) 'to close a potential loophole in the current law, whereby a person . . . could claim that he or she had consumed . . . alcohol which had not yet been absorbed into the bloodstream while the person was operating the vehicle, but which later raised the blood alcohol level' [citation], and (3) 'to recognize that alcohol concentrations dissipate over time, so that a person whose blood alcohol levels exceed the permissible concentrations

9

at the time of the test, was likely to have had unlawfully high blood alcohol levels when driving.'"

This legislative history, however, does nothing to alter the nature of the presumption as one affecting the burden of producing evidence. The point of the presumption is, *in the absence of evidence to the contrary*, to eliminate the need to prove that a BAC test taken within three hours of driving is consistent with the driver's BAC at the time of driving. There is no indication the Legislature was attempting to shift the burden of *proof*. And particularly given that the 3-hour presumption applies to criminal trials, any attempt to do so would raise serious constitutional concerns. (See *County Court of Ulster Cty. v. Allen* (1979) 442 U.S. 140, 156 ["Inferences and presumptions are a staple of our adversary system of factfinding. . . . The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced *by the State*, to find the ultimate facts beyond a reasonable doubt" (italics added)].)

Applying the foregoing here, Coffey's expert testified based on breath and blood test results that Coffey's BAC was in a state of rising and thus her BAC at the time of driving was below 0.08 percent. This substantial evidence rebutted the 3-hour presumption and required the DMV to adduce evidence to prove Coffey's BAC was at least 0.08 percent at the time of driving "without regard to the presumption." (Evid. Code, § 604.)

10

*Substantial Evidence Supports the Trial Court's Finding*

Substantial evidence supports the trial court's finding that the DMV met that burden. The trial court stated, "Even assuming that petitioner Coffey rebutted the presumption under [section 23152, subdivision (b)], there was sufficient evidence based on the blood-alcohol tests and the other circumstantial evidence based on the assessment, observations and tests by the arresting officers at the scene to support the DMV hearing officer's decision under the weight of the evidence."

The issue boils down to whether non-chemical test circumstantial evidence can prove that Coffey's BAC at the time of driving was consistent with her BAC at the time of her chemical tests. Based on *Burg*, *supra*, 35 Cal.3d at page 266, footnote 10, we hold it can.

*Burg* addressed the constitutionality of section 23152, subdivision (b). In discussing the manner of proving up an offense under section 23152, subdivision (b), the court specifically noted that circumstantial evidence is admissible to prove that the result of a test taken after driving reflected the driver's BAC at the time of driving: "Section 23152, subdivision (b), prohibits driving a vehicle with a blood-alcohol level of 0.10 percent or higher; it does not prohibit driving a vehicle when a subsequent test shows a level of 0.10 percent or more. Circumstantial evidence will generally be necessary to establish the requisite blood-alcohol level called for by the statute. A test for the proportion of alcohol in the blood will, obviously, be the usual type of circumstantial evidence, but of course the test is not conclusive: the defendant remains free to challenge the accuracy of the test result, the manner in which it was administered, and by whom. [Citations.] *Of course, both parties may also adduce other circumstantial evidence tending to establish that the defendant did or did not have a 0.10 percent blood-alcohol level while driving.*" (*Burg*, *supra*, 35 Cal.3d at p. 266, fn. 10, italics added.)

For this proposition *Burg* cited *Fuenning v. Super. Ct. In & For Cty. of Maricopa* (Ariz. 1983) 680 P.2d 121, which addressed various constitutional challenges

11

to Arizona's analogous statute. The *Fuenning* court specifically addressed the admissibility of objective signs of intoxication in proving the driver had a prohibited BAC. That court stated, "[A]lthough the evidence is not conclusive, we feel it is relevant. We agree with defendant that the only ultimate issue is whether defendant had a BAC of .10% or greater. In each case in which a violation of subsection B is charged, the state will present evidence of the test and the issue will be whether the test results were an accurate measurement of the defendant's BAC at the time of arrest. Typically, defendants will attack the margin of error, the conversion rate, the calibration of the test instrument, the technique used by the operator, the absorption and detoxification factors, etc. Evidence of defendant's conduct and behavior — good or bad — will be relevant to the jury's determination of whether the test results are an accurate measurement of alcohol concentration at the time of the conduct charged. . . . Evidence that at that time the person charged smelled strongly of alcohol, was unable to stand without help, suffered from nausea, dizziness or any of the other 'symptoms' of intoxication would justify an inference that a test administered some time after arrest probably produced lower readings than that which would have been produced had the test been administered at the moment of arrest." (*Id.* at p. 130.) We agree.

Coffey contends circumstantial evidence can never prove a particular BAC because objective signs of intoxication can be present below a BAC of 0.08 percent. In support of her position, Coffey cites *Baker v. Gourley* (2002) 98 Cal.App.4th 1263 (*Baker*), *People v. Beltran* (2007) 157 Cal.App.4th 235, and *Brenner v. Department of Motor Vehicles* (2010) 189 Cal.App.4th 365 (*Brenner*). These cases are distinguishable, and *Baker* actually cuts against Coffey's argument.

We begin with *Baker*. As here, *Baker* was an appeal from an APS suspension of a driver's license. "At the hearing Baker [the licensee] presented uncontroverted evidence that the Orange County crime lab which analyzed his blood sample had not complied with state regulations requiring such labs to have new alcohol

12

testing procedures on file with the State Department of Health Services." (*Baker*, *supra*, 98 Cal.App.4th at p. 1265.) This rebutted any presumption that the test results were accurate, and the DMV failed to present any evidence to establish their accuracy. As here, Baker exhibited objective signs of intoxication such as "an unsteady gait, bloodshot eyes, slurred speech, [and] a smell of alcohol." (*Ibid.*) "The case thus quickly devolves to this question: Can a given amount of blood-alcohol level be established *without a valid chemical test* by evidence of behavior or indicia typically *associated* with intoxication, such as, like here, slurred speech, bloodshot eyes, or an unsteady gait?" "No." (*Id.* at pp. 1265-1266.)

In reaching that conclusion, however, the *Baker* court distinguished our situation where there *is* a valid BAC test. *Baker* distinguished prior opinions by noting they were focused "on the question of whether a blood-alcohol test administered sometime after arrest could properly show a given blood-alcohol level while driving. (*Of course* non-chemical test evidence is available on that point, because it is a reasonable inference that a driver who is acting drunk at the time of arrest has a *higher* blood alcohol *at that time* than at the time of the actual administration of the chemical test.)" (*Baker*, *supra*, 98 Cal.App.4th at p. 1272.) The *Baker* court then appended a footnote that provides another relevant point to our case: "A corollary to this commonsense point is that non-chemical test circumstantial evidence can shed light on whether the margin of error *in* a chemical test makes any difference." (*Id.* at p. 1269, fn. 2.) Thus *Baker* does not help Coffey at all.

In *People v. Beltran, supra*, 157 Cal.App.4th 235, based on BAC tests indicating rising blood alcohol, both the defense *and* prosecution expert opined the defendant's BAC at the time of driving could have been as low as 0.068 percent. The prosecution expert opined defendant's BAC could have been as high as 0.09 percent. (*Id.* at p. 239.) The issue in *Beltran* was whether, in a criminal trial, given the evidence at hand, it was error to instruct the jury on the 3-hour presumption. Based on a

13

constitutional analysis inapplicable here, the court held it was error and simply noted in a footnote, "While there was other evidence that defendant was under the influence at the time of driving, our review of the record reveals no expert testimony tying defendant's objective symptoms of intoxication (weaving, speeding, odor of alcohol, and performance on field sobriety tests) to any particular BAC." (*Id*. at p. 246, fn. 10.) This offhanded statement was simply an observation about the state of the evidence in that case, not a statement of a legal principle. Thus it does not help Coffey.

Finally, *Brenner*, *supra*, 189 Cal.App.4th 365, is distinguishable because the procedural posture was opposite to our procedural posture. There, a breath test indicated a BAC of 0.08 percent. The driver's expert testified at an APS hearing, however, that the particular testing device was miscalibrated so that it reported results 0.002 percent higher than it should. (*Id.* at p. 368.) The APS hearing officer upheld the license suspension, but the trial court issued a writ of mandate setting the suspension aside. (*Id.* at p. 369.) On appeal, therefore, the appellate court's posture was opposite to ours: to determine whether substantial evidence supported a finding that the driver was *not* driving at 0.08 percent. (*Id.* at p. 370.) In discussing the evidence of objective signs of intoxication, the court stated, "The Department also asserts the trial court failed to consider the PAS results, Officer Gilliam's observation of plaintiff's impaired driving, the field sobriety tests, and other indicia of intoxication. These arguments focus exclusively on the evidence supporting the DMV hearing officer's conclusions, and therefore misapply the substantial evidence standard. As stated, our task is to search for evidence or draw inferences from the evidence supporting the trial court's conclusions, not those of the DMV hearing officer. [Citation.] Moreover, the basis for suspension of plaintiff's driver's license was his operation of a vehicle while he had a BAC of .08 percent. While the impressions of the officer may have a bearing on plaintiff's level of impairment, they have no bearing on the precise level of his BAC. As there is evidence in the record supporting the trial court's conclusion, we are bound to uphold it." (*Id.* at

14

pp. 372-373.) In addition to being in a different procedural posture, we note that in *Brenner* there was no valid, undisputed BAC test at 0.08 percent or above, and thus the court's rejection of the circumstantial evidence is consistent with the holding in *Baker*.

In reaching the conclusion that the circumstantial evidence here was sufficiently substantial to support the trial court's ruling, we hasten to add that nothing about our opinion compels a fact finder to accept any particular combination of signs of intoxication as proving a particular BAC at the time of driving. Trial courts must independently weigh the evidence and reach their own conclusions. Our holding is limited to the proposition that such evidence constitutes substantial evidence sufficient to sustain such a finding in the presence of a valid BAC test taken a reasonable time after driving.

DISPOSITION

The judgment is affirmed. Coffey's petition for a writ of supersedeas is dismissed as moot. The DMV shall recover its costs on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MOORE, J.

15