Filed 2/17/16  Bernard v. Department of Motor Vehicles CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Lassen)

----

| | |
|---|---|
| JASON L. BERNARD, | C078256 |
| Plaintiff and Appellant, | (Super. Ct. No. 57635) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

Plaintiff and appellant Jason L. Bernard contests the trial court's denial of his petition for writ of mandate, in which he sought an order directing defendant and respondent Department of Motor Vehicles (DMV) to set aside its decision suspending Bernard's driver's license.  Though the parties' arguments center on the rebuttable presumption set forth in Vehicle Code section 23152, subdivision (b)[1] that Bernard had driven with a blood-alcohol content (BAC) of 0.08 percent or higher based on his

---

[1] Undesignated statutory references are to the Vehicle Code.

1

subsequent breath test results showing a 0.12 percent BAC, we conclude that regardless whether the presumption applied or was rebutted, there is substantial evidence to support the trial court's denial of Bernard's petition for writ of mandate. Thus, we will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 24, 2012, at approximately 3:25 p.m., Officer Thabiti Mwalozi arrested Bernard on suspicion of driving under the influence (DUI) of alcohol and with a BAC of 0.08 percent or higher, and suspended Bernard's driver's license. Bernard sought an administrative hearing with the DMV to challenge the license suspension. Evidence submitted at the October 26, 2012 administrative hearing included testimony from Mwalozi and Bernard, as well as the arrest report and statement made by Mwalozi, the administrative per se suspension order, and the results of Bernard's breath tests administered by Mwalozi.

This evidence showed that Officer Mwalozi had responded to a report that a man was slumped over the wheel of a white sport utility vehicle, and had found Bernard asleep in the driver's seat of the vehicle, which was stopped on the wrong side of the road against a sloped embankment. When Mwalozi approached the vehicle, he noticed an open beer can in the center console, removed the key from the ignition (the ignition was not on), and awakened Bernard. Mwalozi noted that Bernard's breath smelled of alcohol, that his eyes were red and watery, and that his speech was slow and slurred. Bernard informed Mwalozi that he had taken half an Ambien (prescription sleep aid) at approximately 1:30 p.m., drank two 24-ounce cans of beer at a nearby trailhead within an hour and a half of Mwalozi contacting him, and attempted to drive home. He did not remember how he came to be parked where Mwalozi located him. Bernard agreed to perform field coordination tests and exited his vehicle. He walked unsteadily, and performed poorly on some of the field tests. Bernard also submitted to two breath tests at

2

approximately 3:30 p.m., both of which revealed his BAC was 0.12 percent. Based on Bernard's elevated BAC, Mwalozi suspended Bernard's driver's license. (§ 13353.2, subds. (a)-(b).)

Bernard testified that he had taken the half an Ambien at about 12:30 p.m. and had tried to go to sleep, but when he could not, he got up at approximately 1:00 or 1:15 p.m., went to the local mini-market, where he bought two 20-ounce cans of beer, drove to the parking lot at the nearby trailhead, and drank three-quarters of one beer.[2] He started to "feel weird" from "more than just alcohol," and only then remembered he had taken the Ambien, so he attempted to drive home. He drove about 100 yards, realized he could not drive, pulled over, turned off his car, and fell asleep. It was about an hour later when Officer Mwalozi contacted Bernard. Bernard also testified he had previously undergone gastric bypass surgery, and believed it had caused the alcohol to be absorbed into his system more rapidly. The hearing officer challenged Bernard as to the effect of Ambien on the absorption of alcohol, but Bernard presented no evidence in that regard. The DMV upheld the suspension of Bernard's license.

Thereafter, the district attorney declined to file criminal charges for DUI against Bernard, concluding "[t]here was not enough evidence to support a finding that [Bernard] was actually 'driving' the vehicle." Instead, Bernard was charged with public intoxication. Based on the dismissal of charges for DUI, Bernard was statutorily entitled to and sought a new administrative hearing with the DMV to challenge the suspension of his license. (§ 13353.2, subds. (e)-(f).)

At the second administrative hearing, which began on May 9 and reconvened on June 10, 2013, Officer Mwalozi was not available to testify, but the hearing officer

---

[2] Bernard apparently discovered that one beer can was unopened and that one-quarter of the other beer remained in the opened can when he went to retrieve his car from the towing company the day after his arrest.

3

admitted into evidence the entire transcript of the October 26, 2012 hearing, including both Mwalozi's and Bernard's testimony, as well as the suspension order and arrest report reflecting the objective symptoms of intoxication Mwalozi observed, and Bernard's breath test results. Bernard provided further testimony at the hearing. On this occasion, he testified he had been sitting in his car in the parked position for more than two hours before Mwalozi contacted him (he denied having testified at the prior hearing that he had been parked for one hour), he had left work at 12:30 p.m., he did not drink any more once he was parked next to the embankment, and he had consumed only part of one beer (now testifying it was two-thirds of one can). He acknowledged that he had driven his car to where it was parked after drinking, but because he made the decision to pull over, park the car, and sleep, he did not believe he was intoxicated at the time. Following the hearing, the DMV sustained the suspension of Bernard's driver's license. The hearing officer also noted that Mwalozi's testimony was credible and that Bernard's testimony was given "[l]ittle weight" because it "was inconsistent with statements made at or near the time of the event" and at the prior hearing.

Bernard subsequently petitioned the trial court for a writ of mandate, seeking an order directing the DMV to set aside its administrative decisions suspending Bernard's driver's license and to remove any reference to Bernard having driven with a BAC of 0.08 percent or higher. Bernard contended that the DMV's findings that Officer Mwalozi had reasonable cause to believe Bernard had driven under the influence and that Bernard had driven with a BAC of 0.08 percent or higher were not supported by the evidence. He also argued the DMV was relying on the rebuttable presumption set forth in section 23152, but that he had rebutted the presumption with his testimony. The DMV argued the evidence presented at the hearings, including Bernard's testimony, supported the administrative suspension of Bernard's license because it showed he was inebriated and that he had admitted to drinking and then driving.

4

The trial court found that though Bernard argued he had rebutted the presumption by testifying he took half an Ambien and had previously had gastric bypass surgery, he did not present any expert testimony on what effect the Ambien or gastric bypass would have with regard to blood-alcohol absorption, and thus he had not successfully rebutted the presumption. The trial court further found Bernard had not rebutted the presumption by testifying at the hearing that he had consumed only two-thirds to three-quarters of a 20-ounce beer when he had previously admitted drinking two full 24-ounce beers, and it also declined to accept Bernard's theory, unsupported by any expert testimony, that in the course of the one and a half to two and a half hours between the consumption of the alcohol and the breath test there had been a rise in his blood-alcohol level without any dissipation or elimination. Therefore, the trial court denied Bernard's petition for writ of mandate, finding "[i]t was not unreasonable for the hearing officer to determine . . . that [Bernard] was in excess, or a 0.08 [BAC percent] or higher, at or about the time that he drove . . . ."

## DISCUSSION

On appeal, Bernard contends the trial court erred in denying his petition for writ of mandate. He claims the trial court should have ordered the DMV to vacate its administrative findings because he presented evidence to rebut the statutory presumption codified in section 23152, subdivision (b),[3] and that there was no evidence other than the statutory presumption to support a finding that he had driven with a BAC of 0.08 percent or higher. The DMV argues Bernard's testimony did not rebut the presumption, and, even if it did, there was substantial evidence to support a finding that Bernard drove with

_____

[3] Section 23152, subdivision (b) provides, in relevant part, "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

5

a BAC in excess of 0.08 percent. Assuming without deciding that the rebuttable presumption applied,[4] we agree with the DMV that even if Bernard successfully rebutted the statutory presumption, there was nevertheless sufficient evidence to support the finding that Bernard had driven with a BAC of 0.08 percent or higher.

To affirm the administrative per se suspension of Bernard's driver's license pursuant to section 13382 for DUI or with a BAC of 0.08 percent or higher, the administrative hearing officer had to find the DMV had shown, by a preponderance of the evidence, that (1) the arresting officer had reasonable cause to believe Bernard had been driving, (2) Bernard was arrested for an enumerated offense, i.e., DUI or with a BAC of 0.08 percent or higher, and (3) Bernard drove with a BAC of 0.08 percent or higher. (§§ 13557-13558, 23152; *Coffey*, *supra*, 60 Cal.4th at pp. 1207-1208.) When Bernard challenged the DMV's administrative decision in the trial court by petition for writ of mandate, the trial court had "to determine, based on its independent judgment, whether the weight of the evidence supported the administrative decision." (*Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1567-1568 (*Hildebrand*).) The trial court strongly presumes the administrative findings are correct, and it is the petitioner's burden to establish the administrative hearing officer abused his or her discretion. (*Id.* at p. 1568.)

Our subsequent review of the trial court's denial of a driver's writ petition is limited: " '[W]e "need only review the record to determine whether the trial court's

---

**4** We note initially that it has not been decided whether this presumption applies in administrative per se suspension hearings such as the one at issue here. (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1208-1209 (*Coffey*).) Both parties appear to assume it does apply, and *Coffey* deduces in dicta that the legislative history of section 23152 would support application of the presumption in such hearings. (*Coffey*, at pp. 1208-1209.) Nonetheless, based on our conclusion that there is substantial evidence to support the trial court's findings, regardless of the presumption, we do not decide the issue.

findings are supported by substantial evidence." [Citation.] " 'We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings.' " ' " (*Coffey*, *supra*, 60 Cal.4th at p. 1217.) If the only issue involved turned on the interpretation of statute or regulation, we would not be bound by the trial court's conclusions, but where, as here, "the superior court analyzed the record, made credibility determinations, and applied the law to the facts as established in that manner . . . , we should give the trial court appropriate deference with respect to its views on whether the administrative findings were supported by the weight of the evidence." (*Hildebrand*, *supra*, 152 Cal.App.4th at p. 1568.)

Bernard does not dispute there was substantial evidence to support the administrative finding that Officer Mwalozi had reasonable cause to believe he had been driving or that he was arrested for one of the statutorily enumerated offenses. Nor does he dispute that the rebuttable presumption of section 23152, subdivision (b) applied, for his breath test showed his BAC was 0.12 percent and he testified he had driven within three hours prior to the completion of the breath tests.[5] Rather, he contends he rebutted the presumption based on his testimony that he had consumed only a portion of one beer, he did not believe he was feeling the effects of intoxication but of the Ambien when he was driving, he believed his gastric bypass procedure had altered his alcohol absorption,

---

[5] Section 23152, subdivision (b) provides, in relevant part, "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

and there was not enough time between his consumption of the alcohol and driving the car for his BAC to be sufficiently elevated.

To rebut the section 23152 presumption, the driver need only "present[] evidence which, *if believed*, 'would support a finding of [the] nonexistence of' [citation] the presumed fact," i.e., that the driver had a BAC of 0.08 percent or higher when he or she was driving. (*Coffey*, *supra*, 60 Cal.4th at p. 1210.) This evidence must be "sufficient to negate the presumed fact," i.e., that Bernard drove with an elevated BAC. (*Id.* at pp. 1209-1210.) If the presumption is rebutted, "the trier of fact must weigh the inferences arising from the facts that gave rise to the presumption against the contrary evidence and resolve the conflict." (*Id*. at p. 1210.) Thus, though the presumption disappears, the facts that permitted the presumption to be used in the first place may still be considered in determining whether the driver had an elevated BAC when he or she was driving. (*Id.* at pp. 1210, 1216.)

Here, Bernard testified he took half an Ambien at 12:30 p.m. (or later, depending on which instance of testimony is credited), bought beer sometime after 1:15 p.m., drank some amount of beer shortly thereafter (two-thirds to three-quarters of one 20-ounce can), felt the combined effects of the Ambien and alcohol, and immediately drove about 100 yards before realizing he could not drive. His breath tests, which resulted in a BAC of 0.12 percent, were conducted anywhere from one hour to more than two hours later. He also testified he did not believe he was intoxicated when he drove because he made the logical decision to pull over. He contends this evidence, if believed, supports the logical conclusion that "the alcohol had not yet had time to assimilate into his system at the time he moved his vehicle the 100 to 150 yards down the street from his initial location at the . . . trailhead." The trial court clearly disagreed, finding Bernard had not rebutted the presumption because he had not presented any expert testimony as to the effect of the Ambien or gastric bypass surgery on the rate at which Bernard would have

8

absorbed the alcohol, his testimony was inconsistent with his prior statements, and his theory would require the illogical conclusion that Bernard's BAC had risen without any dissipation or elimination during the period between his driving and the breath tests. We need not decide the matter because, even assuming Bernard's evidence would be sufficient to rebut the statutory presumption, there was sufficient evidence in the absence of the presumption to support the trial court's denial of writ relief, thereby sustaining the administrative decision to suspend Bernard's license. (See *Coffey*, *supra*, 60 Cal.4th at p. 1217-1218.)

Contrary to Bernard's apparent position, the DMV could consider all evidence presented at the administrative hearing, including Bernard's own testimony and prior statements, to determine whether it had been proved by a preponderance of the evidence that Bernard drove with an elevated BAC. (*Coffey*, *supra*, 60 Cal.4th at p. 1210.) The DMV did not have to prove Bernard's BAC at the time he drove with direct evidence. (*Id.* at p. 1213 ["circumstantial evidence of intoxication may be admissible when later-administered chemical tests show a BAC exceeding the legal limit"].) Nor did the DMV have to disregard all of Bernard's testimony merely because it discredited some as inconsistent with his prior statements. (*People v. Du Bont* (1965) 235 Cal.App.2d 844, 849 ["trier of fact may reject any part of a witness'[s] testimony and give credence to other portions"]; see *Bruce v. Ullery* (1962) 58 Cal.2d 702, 711 [" 'jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material' "].)

Rather, the DMV (and the trial court) could consider the circumstantial evidence presented. Specifically, Bernard's admission to drinking two 24-ounce beers and to subsequently driving, the location and placement of his vehicle, the smell of alcohol on his breath, the physical indications of intoxication (red, watery eyes, slurred speech,

staggering ambulation), the presence of an open can of beer in his vehicle, his BAC test results of 0.12 percent, his claim that his gastric bypass caused him to absorb alcohol more quickly than most, and his admission that he felt the combined effects of the alcohol and Ambien while driving, constitute substantial evidence to support a finding by a preponderance of the evidence that Bernard had driven with a BAC of 0.08 percent or higher. Therefore, the trial court did not err in denying Bernard's petition for writ of mandate.

## DISPOSITION

The judgment (order denying petition for writ of mandate) is affirmed. The DMV shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

BUTZ , J.

We concur:

NICHOLSON , Acting P. J.

HULL , J.