Filed 3/15/23  Boer and Sons v. Gomes CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BOER AND SONS, INC., et al., <br><br> Plaintiff, Cross-Defendants and Respondent, <br><br> v. <br><br> ROBERT W. GOMES, <br><br> Defendant, Cross-Complainant and Appellant. | F082403, F083110 <br><br> (Super. Ct. No. 2019054) <br><br> **OPINION** |

-ooOoo-

APPEALS from a judgment and an order of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Law Office of Kathleen P. Clack and Kathleen P. Clack for Defendant, Cross-Complainant and Appellant.

Clapp Moroney Vucinich Beeman & Scheley, Kory L. Phillips and Andrew K. Murphy, for Plaintiff, Cross-Defendants and Respondent.

-ooOoo-

An owner of ranchland, Robert W. Gomes, wanted to convert his land to an almond orchard.  He leased the land to a family-owned farming corporation, Boer and

Sons, Inc. ("Boer"), to plant the orchard.[1]  A few years into the lease, the relationship between Gomes and Boers soured.  Boer sued Gomes, alleging many causes of action, most of which related to Gomes's numerous alleged violations of Boer's contractual right to the quiet use and enjoyment of the leased property ("Premises").  Gomes cross-complained, also alleging several causes of action, relating mainly to Boer's alleged failure to control water run-off and soil erosion which caused the Premises to fall into disrepair.

The trial court bifurcated the complaint and cross-complaint and the cross-complaint only was tried before a jury.[2]  The jury returned a complete defense verdict for Boer, finding Boer not liable on any cause of action.  After the court entered a judgment for Boer on the cross-complaint, Boer moved for attorney fees and costs.  The court awarded fees but denied costs.

Gomes separately appeals from the judgment and the order awarding attorney fees.  We ordered the two appeals consolidated for purposes of opinion only.  We conclude Gomes has not shown any reversible error in the judgment or order appealed from.  As we will explain, most of the issues Gomes raises were forfeited.

We affirm the judgment and order.

### STATEMENT OF THE CASE

In March 2016, Boer filed a complaint against Gomes, both in his individual capacity and in his capacity as trustee of the Robert W. Gomes Trust, for breach of the lease, trespass, nuisance, injunctive relief, declaratory relief, and specific performance.  The complaint alleged Gomes violated the right of first refusal granted to Boer by the lease.  It also alleged Gomes erected a shooting structure on the Premises and shot high-

---

[1] While the corporation will be referred to as "Boer," members of the Boer family will be referred to by their first and last names.

[2] It appears that Boer's complaint was dismissed on April 8, 2021.

2.

powered rifles on the Premises while Boer's employees and independent contractors were working.

In December 2019, Gomes filed his fourth amended cross-complaint against Boer and John Boer III, the president of the corporation. The cross-complaint was for breach of the lease, elder abuse, negligence, nuisance, trespass, intentional infliction of emotional distress, injunctive relief, and specific performance. Gomes alleged that Boer's farming practices resulted in soil slippage, erosion, drainage issues, and obstruction of safe ingress and egress to and from his property;[3] that Boer committed Water Code violations; that Gomes was pressured into signing the lease; that Boer engaged in wrongful conduct to interfere with Gomes's use and enjoyment of his land to induce him to sell his property to Boer; that Gomes was deprived of his safety and free use of his property; and that Gomes's mental and physical health were compromised as a result of Boer's actions.

John Boer III died in 2019 and his wife, Marcia Boer, in her capacity as his personal representative, was substituted in as a cross-defendant in 2020.

Both the complaint and cross-complaint were initially set to be tried before a jury. After the jury was empaneled and given preliminary instructions, but before opening statements, the court bifurcated the action and only the cross-complaint was tried before the jury.

After the close of evidence, the trial court granted Boer's nonsuit motion on the emotional distress cause of action. The rest of the claims were submitted to the jury, and the jury returned a verdict finding Boer not liable on any cause of action.

The court entered judgment for Boer on the cross-complaint. Boer later moved for contractual attorney fees and costs, and Gomes opposed the motion. The court awarded

---

[3] The Premises were part of a larger piece of property where Gomes lived.

attorney fees but not for the full amount claimed.  The court did not award any costs, holding that the motion was untimely as to the request for costs.

## FACTS

### I.      Principal facts

Gomes purchased property in Stanislaus County in 1973 to raise cattle to sell.  At that time, he owned a trucking business hauling sand and gravel.  He sold his trucking business when he turned 65 and began raising cattle full time.  He stopped raising cattle when he turned 73 and saw his neighbors were converting their pasturelands into almond orchards.  He decided to also convert his own pastureland into an almond orchard.  At least three individuals or entities, one of which was Boer, approached Gomes to attempt to lease his property for an almond orchard.

Around 2008 or 2009, Gomes and Boer began negotiating the terms of a lease. Gomes spent considerable time reviewing the proposed lease agreement.  He reviewed the proposed lease with several people he knew.  He made notes as to revisions he wanted made to the lease and provided those revisions to Boer.  Boer accepted all the changes Gomes requested.

Gomes and Boer signed the lease on July 28, 2010.  The initial term was 20 years, with Boer having two 5-year extension options.  The Premises comprised 50 acres on which Boer was to plant an almond orchard.

Gomes testified that on July 27, 2010, John Boer III called Gomes and told him that if the lease was not signed immediately, Boer would be unable to order the trees to plant on the Premises and would lose a year of production.  Gomes testified that John Boer III told Gomes that he needed to come to John's lawyer's office the next day to sign the lease.  Gomes brought a copy of the lease with him to Boer's lawyer's office. Gomes's copy was about six pages long, but he was given a document to sign that was 17—18 pages long.  Gomes chose to sign the lease without reading the new document.

Gomes testified as follows regarding the lease negotiations:

4.

"[BOER'S COUNSEL]: Did Boer and Sons or anyone from the Boers have any power or any rights to give you any sort of orders or have control over you in any way?

"[GOMES]: No. Would you ask that question of a 30-year-old? No. I have not needed their help in any way whatsoever.

"[BOER'S COUNSEL]: They had no ability to make decisions for you or—

"[GOMES]: No. They don't do that. They can't—they can't."

Of particular importance to this litigation is the lease provision that requires Boer, at its own expense, to keep and maintain the Premises "in good order and repair and in as safe and clean a condition as when received, reasonable wear and tear excepted[.]"

Boer developed the Premises into an almond orchard. The development work included earth moving, installing a well and pump station, and installing an irrigation structure. Boer then planted over 4,400 almond trees less than a year after the lease was executed.

The orchard was uphill from Gomes's home, and Boer took measures to protect Gomes's home from downhill water run-off and soil erosion. Boer purchased straw bales and straw wattles in 2010 to stop water and mud intrusion and built berms in 2011. The wattles were replaced every year, and the bales were replaced every two years. Boer also dug a V-ditch to channel water away from Gomes's home. Boer had a weather station set up on Gomes's property so that Boer would receive storm alerts and be better able to protect the property when it rained. Boer employees were on standby at all times of the day and night during rainy seasons to get to work to protect the property from water run-off and erosion.

Marcia Boer testified that developing property for agriculture disturbs the soil and requires remedial work to be done every year. She testified that if any mud slippage went into Gomes's driveway, it would be remedied "within a day." John Boer IV testified that

5.

water got into Gomes's garage one time and that Boer helped Gomes get the water out of the garage. Marcia Boer testified that Gomes did not bring any issues to Boer's attention regarding Boer's water and soil control measures until 2013.

## II.  Gomes's expert witness

John Minney, a licensed civil and geotechnical engineer, testified as an expert witness for Gomes. Minney visited Gomes's property twice in 2019, once in May and again in December. During his May visit, he found "some erosion issues" on the Premises. He saw multiple areas where there was what he would consider "excessive erosion." It appeared to him the Premises were "just not being maintained."

Minney described the V-ditch Boer dug as "a rather large erosion channel" in the soil which was "causing dirt to be moved around in places it's not supposed to be." He stated the hay bales and wattles were ineffective at stopping the soil run-off. He saw dirt build-up in Gomes's backyard that "could conceivably run water over into the house." He said the backyard was not draining properly anymore. He also stated there was erosion on one of the roadways on the Premises that "drastically impact[ed]" the ability to drive on it.

In his December visit, he observed that sandbags had been installed at the V-ditch, which he said would slow the water down; however, the ditch was still expanding. He testified the erosion control measures being employed were not curtailing all of the erosion on the Premises.

Minney recommended certain water and erosion control measures to employ on the Premises. The cost to install these measures would be $224,630. These measures included putting a "repair fabric" along 240 feet of one of the berms Boer built, installing a channel pipe to carry water off the Premises, and installing an "interceptor trench." He also testified that extra water control measures may need to be implemented depending on the chemical content of the water run-off from the Premises. He explained that state water regulations would require a water reservoir system to be built on the Premises that

would keep run-off water contained onsite if the run-off water contained sufficient concentrations of certain chemicals. He stated the cost of installing this reservoir system could be another $200,000. The trial court, however, sustained Boer's objection to the testimony about the potential chemical run-off and the associated costs with building the reservoir system as speculative.

## III. Boer's expert witness

Boer called its own expert witness, Phillip Brumley, an almond and walnut farmer who also owns his own consulting firm. Brumley visited the Premises four times. He visited for the first time in September 2019 after Boer called him to examine the Premises after a period of heavy rain. During his first visit, he observed the Premises to be "well farmed and taken care of." In his opinion, the erosion control system in place was "working the way that it had been intended." The system appeared to be handling the rainfall well. Brumley testified that more water control work had been done on the Premises than on other farms he had seen in the area.

Brumley explained that downhill erosion would be expected on the Premises during periods of heavy rainfall. When he returned for his second visit in December 2019, he saw that new water control features had been installed and that they appeared to be functioning as intended. They appeared to still be functioning adequately during his third visit in January 2020. He visited a fourth time in October 2020.

Brumley reviewed Minney's proposed scope of repairs for the Premises. It appeared to Brumley that Minney was recommending a "French drain system," which involves installing a slotted pipe embedded in rock to help drain water away. The pipe would be sleeved with a cloth material that would allow water to pass into the pipe but not silt. Brumley explained the problem with that would be the silt would build up on top of the pipe and create a seal such that water could not penetrate the pipe; that is, the French drain system would clog. In contrast, an open trench that uses sandbags to control

erosion, as what currently existed, would hold soil back and is easier to clean out with either a tractor or shovel.

Brumley also disagreed with Minney's idea to place metal plates over the open trench so that farm equipment could be driven over the trench. Brumley did not think there was enough room at the edge of the orchard to properly install steel plates of that kind. He would also be concerned about the equipment slipping on the plates.[4]

## IV. Gomes's alleged breaches of the lease

The lease provided that Boer was entitled to "quiet possession and enjoyment" of the Premises during the lease term. Boer presented evidence that tended to show Gomes did several things that breached this lease provision.

Around 2014, Gomes began constructing a shooting range on the Premises within the orchard without informing Boer. There had been a shooting bench on the Premises that Boer took down while they were developing the Premises into an orchard. Boer's insurance company advised Boer that there would be no liability coverage if the shooting structure remained on the Premises. There were also times when Boer's employees were working on the Premises and were interrupted by sounds of gunfire. One worker hired to remove almonds from trees refused to work on the Premises because of the shooting.

Gomes also allowed others to travel over the Premises. Gomes sold a portion of other property he owned—not part of the Premises —to another person. Gomes gave that other person permission to cut the fence bordering the Premises and drive through the Boer's orchard with a tractor and disk. Gomes also drove his ATV through the orchards, leaving tracks in the ground. One time, Gomes drove by one of Boer's workers on his

---

[4] California Rules of Court, rule 8.204(a)(2)(C) requires that an appellant's opening brief "[p]rovide a summary of the significant facts limited to matters in the record." Gomes's opening brief summarizes Minney's testimony and heavily relies on it to support his arguments. But he does not even so much as mention Brumley, let alone summarize his testimony, despite that Brumley contradicted much of Minney's testimony.

ATV, slowed down, glared at the worker, patted the gun scabbard on his ATV, and drove away. As of the time of trial, Gomes continued to drive his ATV on the Premises, but only when no one from Boer was there.

## DISCUSSION

### I. Irrelevant evidence

Gomes claims the admission of four categories of irrelevant evidence prejudiced him. He complains of evidence about (1) the right of first refusal; (2) the shooting range and shooting activities at the orchard; (3) Gomes's driving through the orchard on an ATV, including the incident where he patted his scabbard; and (4) Gomes's allowing the fence to be cut, allowing a person to drive through the orchard. He contends all this evidence was relevant only to the causes of action asserted in Boer's complaint and not to any of the causes of action of Gomes's cross-complaint which were being tried to the jury. Though he does not state in his opening briefing which cause of action the prejudice from this alleged error affected, we perceive from his briefing that he claims he was prejudiced with respect to his breach of contract claim.

Gomes objected only to the admission of evidence about the right of first refusal. He objected when Boer's counsel began to discuss the right of first refusal during opening statements, contending that evidence is not relevant to any issues in the cross-complaint. The trial court overruled the objection. At the same time, Gomes failed to object to the other three categories of evidence he now complains of and has forfeited any challenge to the admissibility of any of that evidence. (Evid. Code, § 353.)[5]

We conclude that even if evidence of the right of first refusal were irrelevant, Gomes has not shown how he was prejudiced by its admission.

---

[5] All statutory references are to the Evidence Code unless otherwise stated.

**A.    Applicable law**

"As a general matter, evidence may be admitted if relevant (Evid. Code, § 350), and ' "[r]elevant evidence" means evidence ... having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action' (id., § 210)." (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1213.)  "However, even as a trial court has broad discretion in determining the relevance of evidence [citation], it lacks discretion to admit irrelevant evidence [citation]." (*Rose v. County of San Benito* (2022) 77 Cal.App.5th 688, 710.)

A judgment will not be reversed because of erroneously admitted evidence unless the appellant can show that the error resulted in a miscarriage of justice.  (§ 353, subd. (b); see also Code of Civ. Proc., § 475.)  " 'In civil cases, a miscarriage of justice should be declared only when ... it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'  [Citation.] Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant." (*Paige v. Safeway, Inc.* (2022) 74 Cal.App.5th 1108, 1127.)

**B.    Analysis**

During Boer's opening statement, counsel stated:

> "[BOER'S COUNSEL]:  A few years into the lease—and this was around 2013—two things happened.  The first was that the Boers discovered in January 2013 that Gomes had transferred the property to a trust.  This is not in dispute.
>
> "And you are asking, why is that important?
>
> "If you have ever entered into any sort of a business or commercial type of a lease there is—
>
> "[GOMES'S COUNSEL]:  Objection, Your Honor.  Not relevant.  Not relevant to the cross-complaint.
>
> "THE COURT:  I'm going to overrule at this time based on what was discussed prior to our hearing.  So overruled.

"[BOER'S COUNSEL]: Thank you.

"Contained typically in commercial leases is a provision called a Right of First Refusal.

"What this means is that the business or person who is leasing a property has an option to buy the property in the event the landowner decides to sell the property….

"As I said before, most commercial leases allow for tenant leasing the property the right of first refusal. The lease between the Boers and Gomes is no different. The lease allowed for a right of first refusal to Boer and Sons.

"Gomes didn't honor that clause. He transferred the property without giving Boer the right of first refusal.

"Keep that in mind throughout the trial because it becomes important later in this case.

"When Gomes is attempting to show that the Boers breached their contract with him, one of the elements that Mr. Gomes needs to prove himself is that he did not breach that contract. This will become more clear when we talk to you again during our closing statements."

Boer's closing argument was not requested to be included in the appellate record. In fact, only part of Gomes's closing argument is included in the reporter's transcript. Gomes's counsel began her closing argument in the morning, and then the trial broke for lunch. The rest of the trial after that lunch break was not requested to be part of the reporter's transcript on appeal. We therefore do not know if Boer's counsel mentioned the right of first refusal during closing argument. However, there was some evidence presented at trial regarding the right of first refusal, but a relatively minor amount.

Gomes contends the evidence of the right of first refusal was irrelevant to any cause of action being tried on Gomes's cross-complaint. He asserts that evidence was relevant only to the breach of contract claim that Boer pleaded in its complaint, which was not being tried to the jury, and which concerned Gomes's alleged failure to honor the right of first refusal. Boer counters that this evidence was relevant to Gomes's breach of

11.

contract claim because, as the jury was instructed, one of the elements for that claim was that Gomes did all, or substantially all, of the significant things that the lease required him to do.  Boer's briefing implies that the failure to honor the right of first refusal was a significant breach of the lease that precludes Gomes from recovering for Boer's alleged breach.  Contrarily, Gomes's briefing implies it would be a misapplication of the law to find that his breach of the right of first refusal provision precludes him from recovering from Boer's breach of the lease.  Thus, Gomes contends that he was prejudiced by Boer's statement to the jury during opening statements that Gomes could not recover for breach of contract if he breached the contract himself.

We need not determine whether evidence about the right of first refusal was irrelevant because even if it were, the record does not show that Gomes was prejudiced by its admission with respect to the breach of contract cause of action.  First, the court instructed the jurors during closing instructions that they were to follow the law as the court instructed and that they were to disregard any contrary statements from the attorneys as to what the law is.  " 'Absent some contrary indication in the record, we presume the jury follows its instructions [citations] "and that its verdict reflects the legal limitations those instructions imposed." ' " (*Burchell v. Faculty Physicians & Surgeons of Loma Linda University School of Medicine* (2020) 54 Cal.App.5th 515, 531.)  There is no indication in this record that the jury did not follow the court's instructions.  Relatedly, there is also nothing in the record showing that Boer's counsel mentioned the right of first refusal at all during closing argument.

Additionally, the judgment, which contains the questions and answers for the special verdict for the breach of contract claim, shows that Gomes's alleged breach of the right of first refusal provision of the lease did not influence the jury's verdict.  The judgment reads:

> **"VF 300. Breach of Contract**
>
> "1. Did Robert Gomes and Boer & Sons, Inc. enter into a contract? **Yes**
>
> "2. Did all the conditions that were required for Boer & Sons, Inc.'s performance occur? **Yes.**
>
> "3. Did Boer & Sons, Inc. fail to do something that the contract required it to do? **No.**"

The answer to question 3 shows Gomes's alleged breach of the lease did not influence the verdict. Gomes is concerned that the jury believed it could find for Boer (the defendant) on the breach of contract claim, even if the jury found that Boer had breached, as long as the jury also found that Gomes had breached for failing to honor the right of first refusal. But the answer to question 3 shows that the jury found that Boer was not in breach, and therefore any breach by Gomes would have been inconsequential.

Gomes has not shown a miscarriage of justice from any alleged erroneous admission of the evidence about the right of first refusal. (§ 353, subd. (b); see also Code of Civ. Proc., § 475.) We therefore will not disturb the verdict as to the breach of contract cause of action.

## II. Gomes's claim that jury was insufficiently instructed

The trial court ordered Boer's complaint and Gomes's cross-complaint bifurcated after the jury received preliminary instructions but before opening statements. The court informed the jury during preliminary instructions of the nature of the causes of action of both the complaint and cross-complaint. After bifurcating the case, the court and parties acknowledged the jury should be informed of the bifurcation. The court asked the parties for input on how it should inform the jury about the bifurcation:

> "THE COURT: Did counsel want to give any type of joint statement or work on a joint statement for me to read to the jury as to whether or not there's any confusion as to why Mr. Sodhi's case has been bifurcated, or did counsel want the Court to just give a brief statement?

13.

"[GOMES'S COUNSEL]:  I would be happy if you did it.

"[BOER'S COUNSEL]:  Yeah.  I'm happy if you did it.  I think that's appropriate."

The court then fashioned a statement about the complaint having been bifurcated and delivered it orally to the jurors when they returned to court.  The court told the jury the complaint had been bifurcated from the cross-complaint, and that the jury trial would involve only the cross-complaint.  The statement involved telling the jury that Boer's complaint would not be proceeding before it and recapped the statement of the case for Gomes's cross-complaint.  Neither party objected to the court's statement related to bifurcation.

Now, on appeal, Gomes contends the trial court erred by insufficiently instructing the jury that the complaint and cross-complaint had been bifurcated.  Boer argues Gomes forfeited this instructional issue by failing to raise it below.  We agree with Boer.

" '[A] party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction [citations].' "  (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 655.)  Here, Gomes's counsel forfeited any issue about the bifurcation instructions by not objecting below.  What is more, the court solicited input from both sides regarding the bifurcation instruction, and Gomes's counsel expressly declined to offer any, choosing instead to defer to the court on how best to instruct the jury that the complaint had been bifurcated.

The verdict cannot be disturbed on the ground the jury was insufficiently instructed in regard to the bifurcation.

## III.    Exclusion of expert testimony

Gomes claims the court erred in sustaining Boer's objection to Minney's testimony about chemical run-off from the orchard and the potential associated costs with addressing it.  He has not shown error.

14.

Boer's counsel objected to the testimony and moved to exclude it as based impermissibly on speculation. The trial court agreed with Boer and excluded the testimony on that basis. Though Gomes contends the trial court erroneously excluded this testimony, he does not even begin to properly demonstrate reversible error. That is, he does not set forth the standard of review for the exclusion of expert testimony and does not try to explain how the court erroneously determined the testimony was speculative. All he does is explain how the testimony would have helped his case, but evidence is not admissible just because it would help the party offering it. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 [" 'expert opinion based on speculation … is inadmissible' "].) We therefore reject this unsupported claim.

## IV.   Conduct of trial

Gomes raises two issues about how the trial was conducted. He complains of how the jurors were seated in the courtroom, and of how the trial was audio streamed online but not video streamed. Both claims are forfeited for failing to raise them below.

The trial took place from October to December 2020, during the COVID-19 pandemic. Gomes states in his briefing that the jurors were not all seated in the jury box together; instead, only three were seated in the jury box, and the rest were seated throughout the audience gallery. This was done presumably because of social distancing protocols aimed at reducing the spread of the virus. But there is nothing in the record of where exactly the jurors were seated. Even so, Gomes contends, in conclusory fashion, that the three jurors seated in the jury box were the only ones "who saw the full trial." Gomes raised no issue below regarding the seating of jurors or about their ability to properly see or hear.

Also, due to the pandemic and social distancing protocols, the courtroom was closed to the public. Only the parties, counsel, jurors, and court staff were allowed inside. But the court ordered that the trial be audio streamed live on YouTube so that

15.

anyone from the public could listen in.  There was no video feed of the trial.  Gomes did not raise any issue about public access to the trial, yet he argues on appeal that his constitutional right to a public trial was violated because the trial was not video streamed.  He does not identify the constitutional provision, state or federal, upon which he bases his claim.

Both these contentions are forfeited because Gomes did not raise them in the trial court.  " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'  [Citation.]  'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' "  (*Wu v. Public Employment Relations Board* (2022) 87 Cal.App.5th 715, 698.)[6]

Forfeiture aside, Gomes alleges multiple acts of misconduct that are not supported by the record.  First, Gomes asserts in one sentence of his briefing that one of Boer's attorneys made disruptive body movements during trial.  Gomes does not specify what the attorney did, but we have examined the record citation Gomes provides.  Gomes is referring to a point in the trial when one of Boer's attorneys laughed at an answer Gomes gave.

Gomes was asked a question by his own counsel during direct examination, he answered, and his counsel asked him to repeat the answer more loudly.  Gomes responded with, "Oh, I'm sorry.  I thought I was the one that couldn't hear," before repeating his answer.  At the next break, when the jury left the courtroom, Gomes's

---

[6] Moreover, there is nothing in the record about where the jurors were seated in the courtroom.  Gomes asserts in his briefing, for instance, that only three jurors were seated in the jury box and the rest in the audience gallery, but there is no proof of that.  Nor is there proof of Gomes's bald assertion that most of the jurors could not properly view or hear the trial.  Thus, even were this issue preserved, Gomes would have great difficulty in proving error and prejudice with the record undeveloped on the point.

16.

counsel objected that one of Boer's attorneys was "making faces" and "rolling his eyes" while Gomes was testifying. The accused attorney explained that he laughed when Gomes said he thought he was the only one who couldn't hear because he found it funny. The court then asked that attorney to refrain from any such "nonverbal [cues]," and then said that the court had not seen any unprofessional conduct from any attorney so far. The court stated it had been "keep[ing] an eye out on counsel as well as the jurors." Gomes's counsel then thanked the court, and the court brought the jury back in and trial resumed.

Our review of the record shows that Gomes's statement that he thought he was the only one who could not hear was an attempt at humor, and that a smile or some laughter from someone in the courtroom would have been natural. There is nothing from the context of Boer's attorney's laughter to suggest that he was trying to disparage Gomes or make him look silly. We also note that Gomes's counsel did not make a mistrial motion on this basis or request any kind of sanction, nor did counsel request a jury instruction about Boer's counsel's behavior. Instead, Gomes's counsel accepted the trial court's admonition given to all counsel and proceeded with trial.

Next, Gomes's attorney asserted during appellate oral argument that Gomes experienced bullying and elder abuse inside the courtroom. Gomes did not assert this in his briefing yet his counsel discussed it a great deal during argument. His counsel was apparently referencing the point in the trial where she objected to the way Boer's counsel was making evidentiary objections during Gomes's direct examination. Gomes's counsel stated, outside the jury's presence, that Boer's counsel was lodging objections in a manner that was "deliberately interrupting [Gomes] excessively" and "ruin[ing] [Gomes's] train of thought." Up to that point in Gomes's direct examination, we note that Boer's counsel made at least 26 objections either to Gomes's counsel's questions or to Gomes's answers and that 22 of those objections were sustained. Indeed, the court noted that "many of" counsel's objections were sustained. The court also said it saw no abusive conduct from Boer's legal team and instead observed that their objections

17.

followed the Evidence Code. Our review of the record shows no bullying or unprofessional conduct. And once again, we note that Gomes's counsel made no mistrial motion, requested no sanctions, and requested no admonition.

Finally, Gomes's counsel also during oral argument referred to Gomes's hearing difficulties during trial, though again gave no attention to them in the briefing. She alleged there were many times during trial when Gomes had difficulty hearing, but the trial court reacted with indifference The record does not bear this out. There were indeed several times when either Gomes, who wears hearing aids, or his counsel told the court that Gomes could not hear the proceedings, and each time the court responded with proper concern. For example, Gomes's counsel told the court Gomes had a hearing issue during the first witness's testimony, at which point the court said: "If we could have all parties speak directly into the microphone…. [I]f anyone has issues seeing the witness, hearing the witness, or seeing or hearing any of us, please raise your hand." The court also said then that Gomes has a right to hear the proceedings. Later that day during a break, the court checked to make sure the issue with Gomes's hearing device had been resolved. And later still that same day, Gomes's attorney told the court that neither Gomes's listening device nor his hearing aids were working, and the court adjourned the trial until the next court day because Gomes could not hear.

There were at least two other times when the court temporarily stopped the trial because Gomes's listening device stopped working. The court never expressed frustration or impatience with Gomes's hearing troubles. Instead, the record shows the court was attentive and responsive to the problem. There are several instances of the court showing concern for Gomes's hearing without anyone raising the issue. One time, the court told Boer's counsel to state his objections louder into the microphone so that Gomes could hear. Another time, the court even reminded Gomes's own counsel to speak into the microphone so her client could hear. The court also instructed most of the witnesses when they took the stand to speak into the microphone, and the court

18.

throughout the trial reminded witnesses and attorneys to either speak louder or into the microphone. The record does not reflect that the court ever became upset; instead, it shows the court was concerned about everyone's ability to hear well and would do whatever was necessary, including adjourn early, to ensure everyone could hear the whole trial. Gomes's counsel's argument that the court was somehow indifferent to Gomes's hearing disability is not supported by the record.

## V.  The evidence does not compel a verdict in Gomes's favor

Gomes contends the jury's verdict on the breach of contract, negligence, private nuisance, and trespass causes of action is inconsistent with the evidence presented at trial. We disagree.

Gomes asserts the evidence establishes Boer's liability on each of these four claims. But besides a short assertion that the standard of review is de novo, Gomes does not offer any kind of legal framework for us to analyze his claims of an inconsistent verdict. Moreover, the standard of review is not de novo.

In a case such as this one, " 'where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, … [¶] … the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465—466 (*Sonic*).)

Gomes does not attempt to show how his evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding in his favor. (*Sonic, supra,* 196 Cal.App.4th at p. 465.) Because he has not even identified the correct standard of review, his argument is thus not tailored to it, and for that reason he has forfeited the

19.

issue.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608—609 [it is appellant's burden to establish error]; *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [failure to acknowledge proper scope of review is a concession of lack of merit].)

We also find this issue forfeited because Gomes discussed none of the evidence in support of the verdict, most especially Brumley's testimony.  " 'In every appeal, "the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment.  [Citation.]  Further, the burden to provide a fair summary of the evidence 'grows with the complexity of the record.  [Citation.]' " '  [Citations.]  When, as in this case, an appellant fails to fulfill this duty the claim is forfeited."  (*Oak Valley Hospital District v. State Department of Health Care Services* (2020) 53 Cal.App.5th 212, 237.)

Gomes cites and discusses only evidence that would tend to support findings in his favor on the breach of contract, negligence, private nuisance, and trespass claims.  He does not cite or discuss Brumley's testimony anywhere in his briefing.  Indeed, he does not even mention that Boer called an expert witness, even though Brumley contradicted Minney's testimony about the condition of the Premises and the adequacy of Boer's water and erosion control measures.  The condition of the premises and the adequacy of Boer's control measures were relevant to the breach of contract, negligence, private nuisance, and trespass claims.  Gomes's theory, as explained in his brief, is that Boer's failure to properly maintain the Premises constituted a breach of contract and negligence, and the resulting run-off and erosion constituted a nuisance and trespass.  Brumley's testimony was relevant to these theories of recovery.

We see no reason why the jury was not entitled to credit Brumley's testimony over Minney's.  The failure to discuss Brumley's testimony constitutes a failure by Gomes to fairly summarize the relevant evidence, which results in forfeiture of the issue.

## VI.    Attorney fees

The judgment entered upon the jury's verdict did not award attorney fees or costs.  Boer then filed a motion for attorney fees and costs, requesting $488,998.87 in fees and

$112,219.77 in costs, under the lease provision providing the prevailing party a right to reasonable attorney fees and costs in any litigation to enforce the terms of the lease. Gomes opposed the motion. Following argument, in a detailed written order, the court awarded Boer $403,222.62 in attorney fees and no costs. Gomes filed a separate notice of appeal from the order awarding fees.

Gomes begins his opening brief in the second, parallel appeal by rearguing his grounds for reversing the judgment, which is unnecessary, before turning to his contention that the attorney fees award should be modified downward. The section of his opening brief addressing modification of the fee award contains almost no citation to any substantive law. It does not cite a standard of review for an attorney fees award. He cites only one statute, Code of Civil Procedure section 1033.5, subdivision (c), which sets forth four guiding factors for trial courts to determine cost awards. This statute, however, says nothing about appellate standards of review, and is irrelevant because Boer was not awarded any costs.

Gomes argues the fees award should be reduced essentially because he cannot afford to pay it. He states that Boer had too many lawyers staffed to the case, that it retained unnecessary expert witnesses, and that its lawyers were unnecessarily litigious in that they raised many irrelevant issues in the trial court. None of these contentions are supported by citations to the record or any controlling law. Gomes contends the fee award should be reduced to one-sixth of the total amount awarded because only one of the six causes of action of the cross-complaint was for breach of the lease, while the rest sounded in tort law, and the lease provision authorizing the fee award states that fees would be recoverable in an to enforce the lease terms. Gomes reads this lease provision restrictively, claiming that since the other five causes of action sounded in tort, Boer should not be entitled to recover fees for legal services provided in connection with those causes of action. But again, Gomes offers no legal support for this argument.

21.

In sum, Gomes cites just one irrelevant statute in the section of his brief devoted to the attorney fees award.  For his failure to cite the record or any relevant legal authority, this argument is forfeited.  (*Arega v. Bay Area Rapid Transit Dist.* (2022) 83 Cal.App.5th 308, 318; *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1021—1022.)  We therefore will not disturb the attorney fees award.

## DISPOSITION

The judgment and the order awarding attorney fees are affirmed.  Respondent is awarded its costs in both appeals.

SNAUFFER, J.

WE CONCUR:

MEEHAN, Acting P. J.

DE SANTOS, J.

22.